UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| COMBINED ENERGIES,              )<br>                                               )<br>            Plaintiff,                        )<br>                                               )<br>     v.                                        )     Civil No. 07-17-B-W<br>                                               )<br>CCI, INC.,                                )<br>                                               )<br>            Defendant.                  ) | |

### ORDER ON DEFENDANT'S MOTION TO STAY AND COMPEL ARBITRATION

Finding that the arbitration clause contained in the Purchase Order Agreement does not encompass the current dispute, the Court denies the Defendant's motion to stay the proceedings and compel arbitration.

### I.  STATEMENT OF FACTS

The dispute arises out of conduct Combined Energies (CE) characterizes as CCI, Inc.'s (CCI) "raid" on CE's business. CCI of Anchorage, Alaska is a prime contractor and CE of Augusta, Maine, is a construction manager subcontractor. *Def.'s Mot. to Stay and Compel Arbitration*, Ex. A (Docket # 7) (*Def.'s Mot.*)  On December 28, 2004, the two companies joined together, when they entered into a Teaming Agreement (TA) to develop and submit a project proposal to the U.S. Navy. *Compl.* ¶ 4 (Docket # 1). On August 5, 2005, CCI submitted the proposal, which had been prepared jointly by CE and CCI; the Navy accepted the proposal and awarded the contract to CCI. *Def.'s Mot.* at 1-2. CE and CCI then

entered into a Strategic Alliance Agreement (SAA) on August 23, 2005,[1] which states: "CE and CCI agree to strategically align themselves with one another in order to promote and utilize their respective expertise for the purpose of developing and performing projects . . . ." *Compl*. ¶¶ 5-6; *SAA*. On the same date, they entered into a Purchase Order Agreement (POA), which set forth the terms and conditions under which each party would perform the Navy contract. *Def.'s Mot*. at 2.

CE alleges that CCI inquired about purchasing its business on October 15, 2006, but CE declined CCI's offer on November 17. *Compl*. ¶¶ 9-10. In response, CE claims that CCI "set upon a course of conduct to raid what it could not buy . . . ." *Id*. ¶ 11. According to CE, CCI's conduct included interfering with CE's performance of its obligations under existing contracts, preventing CE from obtaining new contracts, damaging CE's good reputation, and recruiting CE's entire workforce, all in a concerted effort to run CE out of business. *Id*. ¶¶ 12-13, 22. On February 1, 2007, CE filed a six-count Complaint against CCI, claiming: (1) Tortious Interference, (2) Unjust Enrichment, (3) Breach of Contract, (4) Breach of Implied Covenants Including the Duty of Good Faith and Fair Dealing, (5) Defamation and Slander Per Se, and (6) Punitive Damages.

The merits of the complaint are not before the Court in the pending motion; rather, the issue is whether the Court may properly hear the case. CCI relies on an arbitration clause within the POA to insist that CE's claims be submitted to arbitration. The clause reads: "All claims, disputes and matters in question arising out of, or relating to, this POA or the breach thereof … shall be decided by arbitration … [and] shall be governed by the Federal Arbitration Act." *Def.'s Mot*., Ex. C at 19. Based on this clause, on February 21, 2007, CCI

---

[1] The Complaint lists the date of the agreements as August 25, 2005; however, the documents themselves, which are attached to CE's Complaint and CCI's motion, are dated August 23, 2005.

moved to stay the proceedings and to compel arbitration; on March 14, 2007, CE filed its opposition.[2]  *Def.'s Mot.*; *Pl.'s Mem. in Opp'n to Def.'s Mot*. (Docket # 10) (*Pl.'s Opp'n*).

## II. DISCUSSION

### A. Questions of Arbitrability

The Supreme Court has written that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. . . . The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 528 (1st Cir. 1985). Arbitration "will be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Unionmutual*, 774 F.2d at 528 (internal punctuation and citation omitted).

Despite the general deference afforded arbitration, the Supreme Court has made it equally clear that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *First Options v. Kaplan*, 514 U.S. 938, 943 (1995); *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so.") (internal punctuation and citation omitted). As *Mitsubishi* explained, the "liberal federal policy favoring arbitration agreements manifested

---

[2] In the Complaint, CE states that "The Court has jurisdiction under 28 U.S.C. §1332 based on diversity of citizenship of the parties. The amount in controversy exceeds $75,000." *Compl.* ¶ 3. CCI answers, "Defendant admits that the Court has jurisdiction but further answers by stating that Defendant's claims are subject to a binding arbitration clause requiring that this matter be stayed pending arbitration." *Answer* at 1 (Docket # 6).

3

by [section 2] and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements: the Act simply creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Mitsubishi*, 473 U.S. at 625 (internal punctuation and citations omitted). Ultimately, "[a]rbitration under the Act is a matter of consent, not coercion . . . ." *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479 (1989).

Whether a complaint "falls within the reach of this particular arbitration clause is . . . a matter for the district court to determine initially as a matter of federal law." *Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir. 1975).[3] The "Court's consideration of a motion to compel arbitration involves the determination of whether there is an agreement to arbitrate, whether the dispute in question falls within the scope of that arbitration agreement, and whether the party seeking arbitration has waived the right to compel arbitration."[4] *Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 52 (D. Me. 2002); *Bangor Hydro-Electric Co. v. New Eng. Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155-56 (D. Me. 1999). A healthy regard for the federal policy in favor of arbitration does not require a court to "distort the process of contract interpretation . . . in order to ferret out the inappropriate." *Mitsubishi*, 473 U.S. at 627.

---

[3] Section 2 of the United States Arbitration Act provides that a written provision for arbitration "in . . . a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Here, the contract, involving a construction project for the United States Navy by Alaskan and Maine corporations, "evidences a contract in interstate commerce." *Maldonado*, 514 F.2d at 616 n.3.

[4] There is no suggestion that CCI waived its right to compel arbitration; the Court will discuss only the first two factors of the analysis.

4

### B.  Whether There is an Agreement to Arbitrate

The parties recognize that there is an agreement to arbitrate.  Their disagreement turns on the second question: whether the arbitration clause can fairly be read to encompass the current claims.

### C.  Whether the Dispute Falls Within the Scope of the Arbitration Agreement

There are three agreements between CCI and CE:  (1) the TA dated December 28, 2004; (2) the SAA dated August 23, 2005; and (3) the POA dated August 23, 2005.  The TA sets forth the "nature and extent of the agreement . . . to develop and submit a proposal to the U.S. Navy . . . for IDIQ JOC Facilities Support . . . ."  *TA* at 1.  The TA contains no arbitration clause, but does provide that if litigation were to arise between CCI and CE, each would be responsible for its own costs.  *TA* ¶ 9.  The SAA, after referring to the awarded contract, provides that the parties "agree to strategically align themselves with one another in order to promote and utilize their respective expertise for the purpose of developing and performing projects utilizing the Contract."  *SAA* ¶ I.A.  The SAA contains no arbitration clause.

Finally, there is the POA.  The POA is a twenty-one page, standard general contractor-subcontractor contract, delineating the rights and responsibilities between the parties in the performance of the project for the U.S. Navy.  The POA references the contract and defines the "scope of work" to be performed as "the work described in the POA" and requires CE to perform that work "in accordance with the POA."  *POA*, Articles 1, 2.1.  The remainder of the POA addresses commonplace provisions that clarify the respective roles of the contractor and subcontractor, including the schedule of the work, change orders, progress

payments, indemnification, insurance, and the resolution of disputes. It contains the arbitration clause in Article 14:

> **14.1 AGREEMENT TO ARBITRATE.** All claims, disputes and matters in question arising out of, or relating to this POA or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, claims which are the subject of Paragraph 6.2,[5] and the claims described in Paragraph 14.2,[6] shall be decided by arbitration . . . Notwithstanding other provisions in the POA, this POA to arbitrate shall be governed by the Federal Arbitration Act.

*Id.* ¶ 14.1. Article 16 describes the Contract Documents to include the POA itself, CE's response to the Navy RFP, the Contract, and the SAA. *Id.* ¶ 16.3. It fails to refer to the TA.

Here, the Complaint does not allege a dispute between a contractor and subcontractor relating to the work covered by the POA. Unlike *Maldonado*, the dispute is not "contract-generated or contract-related." *Maldonado*, 514 F.2d at 616. The Complaint does not claim any disputes between CCI and CE about the work CE performed under the POA, about payment in accordance with that work, about change orders, delay, quality of workmanship, or the myriad of other commonplace controversies between general contractors and subcontractors.

Instead, the Complaint alleges a dispute between two businesses relating to an alleged attempted take-over. Again, unlike *Maldonado*, CCI's liability, if any, does not arise because it entered into and attempted to perform the contract with CE; rather, it arises because of the actions it allegedly undertook to force CE to sell its business. Taking the allegations in the Complaint as true, CCI cannot be said to have been acting pursuant to the terms of the POA when it allegedly hired away CE's employees, spread false rumors about its business, and

---

[5] Paragraph 6.2 addresses claims against the owner.
[6] Paragraph 14.2 contains exceptions to the arbitration provision not relevant to this action, such as a claim initiated in court by a third party, which results in claims of contribution or indemnity between CCI and CE.

attempted to injure its reputation in an effort to force CE to accept its take-over bid. The SAA and the POA merely provided the backdrop for CE's allegations against CCI. Although an argument can be made that the SAA is incorporated under the terms of the POA as a contract document and is thus subject to the arbitration clause, *see POA* ¶ 16.3, the POA does not attempt to incorporate the TA, which contains no arbitration clause and which CE claims was breached as well. Even with the generous deference the Court is instructed to afford arbitration agreements, the Court cannot conclude that the arbitration clause in a construction contract encompasses a law suit alleging multiple violations of tort and contract law from the unsavory tactics CE claims CCI used in a bid to take-over its business.

### III.  CONCLUSION

The Court DENIES CCI, Inc.'s Motion to Stay and Compel Arbitration (Docket #s 7, 9).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of May, 2007